**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **CRIMINAL NO. 24-CR-235** |
| **GUSTAV SEESTEDT,** | |
| Defendant. | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF
PRETRIAL DETENTION OF DEFENDANT GUSTAV SEESTEDT**

Between May 7, 2024, and May 9, 2024, Defendant engaged in a direct message chat with an undercover police officer ("UC") located in the District of Columbia, via the encrypted on-line application Telegram. During the chat, Defendant sent the UC four (4) video files depicting minors engaged in sexually explicit conduct. Defendant further expressed to the UC that he was sexually attracted to children, and that he had "no limits[1]" except "scat" and "gore."

On May 15, 2024, a federal grand jury indicted Defendant on one count of distribution of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2). The United States respectfully submits this memorandum in support of its motion seeking Defendant's detention pending trial pursuant to Title 18, United States Code, Sections 3142(f)(1)(A) (crime of violence) and 3142(f)(2)(A) (risk of flight). Because Defendant poses an unmitigable risk to community safety and is a flight risk, this Court should order that he remain detained pending trial.

---

[1] "No limits" is a phrase commonly used by individuals with illicit sexual proclivities, including incest, the sexual abuse and exploitation of children, and child pornography.

**Factual Background**

1. On December 9, 2023, an employee of Dropbox Inc. reported to the National Center for Mission and Exploited Children ("NCMEC")[2] that Dropbox user #641780728 -- who had registered the account with an email address of gdseestedt@gmail.com and provided the name "Gus Seestedt"-- had uploaded four (4) files of child sexual abuse material to the Dropbox servers. The Dropbox employee reported that the files had been located on the Dropbox servers on December 8, 2023, and that a Dropbox employee had reviewed all four (4) of the files prior to reporting the suspected Child Sexual Abuse Material ("CSAM") to NCMEC.

2. A member of the MPD–FBI Child Exploitation and Human Trafficking Task Force reviewed the four files of suspected CSAM and observed among the files, the following:

   a. A file entitled "**48ec0e21498c4ab1c635191aea84a35f**" which is twenty (20) minutes and fifty-nine (59) seconds in length and depicts the sexual abuse of a prepubescent girl by an adult male. The video begins with the girl dressed and laying on a bed. Then, an adult male undress the child, places his mouth on the child's mouth and vagina, penetrates the child's exposed vagina with his mouth and tongue, and then penetrates the child's vagina with his erect penis. At the end of the video, the man dresses the girl and gives her money. He then tells her to say that she found the money on the floor.

---

[2] The National Center for Missing and Exploited Children (NCMEC) is a non-profit 501(c)(3) organization that serves as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited children. NCMEC operates a CyberTipline and Child Victim Identification program. Through the CyberTipline, Internet Service Providers (ISP), Electronic Service Providers (ESP), and individual persons may notify NCMEC of online child sexual abuse images. NCMEC makes information submitted to the CyberTipline and Child Victim Identification Program available to law enforcement agencies

b.  A file entitled **"r52ZRi7rIk9z5e-eGozrLVwkLwmg0FH3sRwwvKmSYc8"** which is thirty-six (36) seconds in length, depicts a prepubescent girl sitting on the lap of an adult male. The adult male is wearing gym shorts which are pulled down to expose his erect penis which is being held in the hand of the child. The child continues to hold and rub the adult male's erect penis until the adult male ejaculates onto the child's hand and on his own groin.

c.  A file entitled **37ed439cc5da86183b154e32919c2a** which depicts a clothed prepubescent girl looking up at the camera while a man places his erect penis on her lips and presses his penis on her lips.

d. A file entitled **48ecOe21498c4ab1c635191aea84a35f** which depicts an adult man penetrating the vagina of a prepubescent girl with his penis.

3.  On March 1, 2024, an employee of MediaLab / Kik reported to NCMEC that the Kik user, Jaydee9955, had uploaded twenty-two (22) files of suspected child sexual abuse material to the Kik servers between January and March 2024 from four IP addresses including 138.88.69.182. Kik further reported that the user had provided a name of "Jay Dee" and used an email address of tubulardude995@gmail.com to register the account. Kik also reported that a Kik employee had reviewed the reported files prior to submission to NCMEC.

4.  A member of the MPD–FBI Child Exploitation and Human Trafficking Task Force reviewed the suspected CSAM files and found that some of the files had been reported multiple times. The officer further found that the files had been sent by Kik user Jaydee9955 to another

Kik user via private chat message. Among the files distributed by Jaydee9955 were videos depicting the following:

    a.    A file entitled "**060e65c8fe6db6c47216f73c5315c3ba**" which is one (1) minute and fifty-eight (58) seconds in length and depicts an adult male penetrating the mouth of a prepubescent girl with his erect penis. The video further shows the adult male standing over the child and ejaculating onto her face while she is seated on a toilet. The file was distributed to another Kik user via private chat message on January 7, 2024.

    b.    A file entitled "**611edfe7c6146cfe612ae778d1cd8682**" which is forty-four (44) seconds in length and depicts a completely nude prepubescent female laying on a piece of furniture with her vagina exposed to the camera. An adult male eventually places his hand on the child's vagina and penetrates her vagina with his fingers. The file was distributed to another Kik user via private chat message on February 16, 2024.

    c.    A file entitled "**cd5f193efb90725e5a30be8ef28888f8**" which is fifty-four (54) seconds in length and depicts a compilation video of several prepubescent females being orally penetrated by the erect penises of adult men. The children are in various states of dress and undress and one adult man ejaculates on top of a child's head. The file was distributed to another Kik user via private chat message on February 23, 2024.

5.    On March 12, 2024, a member of the Federal Bureau of Investigation's (FBI) Washington Field Office (WFO) issued an administrative subpoena for subscriber information related to tubulardude995@gmail.com. This email account had been used to register and/or access the identified Kik account used to distribute CSAM.

6. On March 13, 2024, Google provided the requested information and advised that the account had been created on October 28, 2022, with a username of Jay D. The account's "Terms of Service" had been accepted during account creation on October 28, 2022, from an internet protocol (IP) address of 2600:4040:2967:9f00:44e4:632b:1249:dc90 which is registered to Verizon. On the same day this information was received, an administrative subpoena was issued for subscriber information related to the aforementioned Verizon IP address.

7. On March 15, 2024, Verizon reported that the account is registered to Gustav Seestedt of 2854 Connecticut Avenue #40 in Northwest, Washington, D.C. 20008. Verizon further reported that the account is registered with the phone number 202-765-7576 and the email address of [gdseestedt@gmail.com](mailto:gdseestedt@gmail.com).

8. On March 18, 2024, an administrative subpoena was issued for subscriber information and IP logs related to the Google account of [gdseestedt@gmail.com](mailto:gdseestedt@gmail.com). The same day, Google reported that the account had been created on October 9, 2006, by a user who provided the name Gus Seestedt and the phone number 202-765-7576. Additionally, Google reported that the account had been accessed on January 7, 2024, from IP address 138.88.69.182, which is the same IP address used to access the Jaydee9955 Kik account.

9. On March 20, 2024, Verizon Fios reported that the IP address 138.88.69.182 was registered to Gustav Seestedt of 2854 Connecticut Avenue #40 in Northwest, Washington, D.C. , and that the phone number 202-765-7576 is registered to the account.

10. On March 18, 2024, in response to an administrative subpoena, AT&T reported that the user for phone number (202) 765-7576 is Gustav D. Seestedt.

11. On March 25, 2024, the Honorable Moxila Upadhyaya signed search warrants for the Dropbox account associated with user #614780728 and the Kik account associated with user

JayDee9955. Among the returns from those warrants were videos depicting minors engaged in sexually explicit conduct and messages sent to other Kik users discussing sexual fetishes, including the sexual abuse of children. The returns revealed that the defendant had distributed videos depicting minors engaged in sexually explicit conduct to other Kik users. For example, on February 17, 2023, the Defendant engaged in a chat with another Kik user during which the defendant sent the other user sexually explicit videos of underage girls. The defendant said during this chat that he was "stroking [his] soft coked up dick to littoe [sic] butts." When the other Kik user asked, "all these girls underage?" the defendant responded, "lol thise [sic] maybe." The other Kik user then replied, "nah I am not into that man. The fuck" and the chat ended.

12. According to the Kik search warrant return, between November 2022 and March 2024, the defendant had added 6,526 Kik users as "friends" on his Kik account and he had engaged in private chats with many of them. In at least one message to another Kik user, the defendant shared his Telegram handle which was "SUG5553."

13. On May 7, 2024, an undercover law enforcement officer ("UC") working in a satellite office assigned to the Washington Field Office (WFO) of the Federal Bureau of Investigation (FBI) direct messaged the defendant on Telegram.

14. During his chats with the UC, the defendant expressed a sexual interest in children and expressed a preference for children between the ages of 10 to 13 but also stated that he had "no limits" except for "scat" and "gore." He then told the UC that he was sexually attracted to children as young as infants if had a nice "booty."

15. Between May 7, 2024, and May 8, 2024, the defendant sent the UC four (4) videos depicting minors engaged in sexually explicit conduct. In one video, an adult man is depicted penetrating the anus of a female toddler with his erect penis. The toddler can be heard on the video

crying during the rape and trying to pull away from her assailant. The man instructs her to hold her legs up and he continues to hold her in place as he forcibly assaults her.

16. The UC told the defendant that he had access to a six-year-old girl[3] who is his girlfriend's daughter and then claimed that he had snuck into her room and masturbated while watching the child. The defendant commented on the sexual abuse of the purported child with the following statements: "Mmm I want your daughter sucking my cock;" "I wanna see if she puts her ass on display in thongs;" and "Wish she had some slutty panties." When asked if he would want to see pictures of the girl when the UC is able to sneak into her room again, the defendant suggested using drugs to get the girl in a condition to allow them to dress her in provocative underwear for the sexual gratification of the men. The defendant told the UC to "have her snort blow off my dick." The defendant then asked the UC to take photographs of the purported child's "panty drawer" and "her backside."

17. During their chat on Telegram, the UC and the defendant also discussed the defendant's 15-month-old daughter. Although the defendant denied that he would touch his daughter, he stated that he would buy her "booty lace pantues [sic]" and "have my buds like you to see a little ass hang out." The UC then asked, "oh shit, would you????" and the defendant responded, "oh hell yeaa." The defendant then asked the UC if he could feel the UC's erection if he showed the UC his daughter's butt.

**PROCEDURAL HISTORY**

18. On Wednesday May 15, 2024, a federal grand jury sitting in the District of Columbia returned a one-count indictment charging Defendant with a violation of Title 18,

---

[3] The UC was not referring to a real child.

United States Code, Section 2252(a)(2), (b)(1) (Distribution of Child Pornography), and the Honorable Moxila Upadhyaya issued an arrest warrant the same day. The case was assigned to the Honorable Amy Berman Jackson.

19. On Thursday, May 16, 2024, members of the MPD–FBI Child Exploitation and Human Trafficking Task Force arrested the defendant at his home in Washington, D.C., and executed a search warrant at his residence. Following his arrest, the defendant appeared before the Honorable Moxila Upadhaya. At the initial appearance, the United States moved for pretrial detention pursuant to Title 18, United States Code, Section 3142(f)(1)(A), as Defendant has been charged with a crime of violence. A detention hearing was scheduled for Monday May 20, 2024. The government now respectfully submits this Memorandum in support of its Motion for Pretrial Detention.

### **Applicable Legal Standard**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that a defendant is a flight risk, *see United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996)), and by clear and convincing evidence that he is a danger to the community, *see* 18 U.S.C. § 3142(f).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the

nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

Here, because Distribution of Child Pornography is a crime of violence involving a minor victim, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(E).  This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").  But even if the defense produces credible evidence, the presumption retains evidentiary weight and is considered by the Court among the Section 3142(g) factors.  *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' . . . The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

In making this determination, the "rules concerning the admissibility of evidence in

criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

## Argument

For reasons that follow, there are no conditions of release adequate to reasonably assure community safety or Defendant's return to Court, and this Court should detain him pending trial.

### A. Nature and Circumstances of the Charged Offense

Defendant's alleged conduct in this case is extremely harmful and dangerous to the community. As detailed above, the nature and circumstances of the present offense make clear that this factor weighs heavily in favor of detention because Defendant's criminal conduct involves the sexual exploitation of the most vulnerable members of our community – very young children. "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing magistrate court's release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same). Children captured in images and videos depicting their sexual abuse are

significantly harmed at the time that the images and videos are created, and they are re-victimized and re-traumatized every time an individual, like Defendant, views and shares these images for his own sexual gratification and for the sexual gratification of others. *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii); *Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL 4964505, at *4 (same).

The seriousness of the offense is also reflected by Congress's judgment that those charged with distributing child pornography should be presumed detained pending trial, *see* 18 U.S.C. § 3142(e)(3)(E), and are subject to a five-year mandatory minimum term of imprisonment upon conviction, *see* 18 U.S.C. § 2252(b)(1).

Defendant's conduct in this case was particularly egregious in that it involved the distribution of multiple videos depicting the sexual abuse of children as young as toddlers. Indeed, the Sentencing Guidelines recognize the serious nature of the offense that Defendant is charged with, which include offense-level enhancements for material involving a prepubescent minor, *see* USSG §2G2.2(b)(2), and material that portrays sadistic or masochistic conduct or sexual exploitation of an infant or toddler, *see* USSG §2G2.2(b)(4). The Guidelines provide additional enhancements for engaging in the knowing distribution of such material, *see* USSG §2G2.2(b)(3)(F), and for using a computer or interactive computer service to do so, *see* USSG §2G2.2(b)(6). Based on the evidence available at this early stage of the case, the United States estimates Defendant's total Offense Level under the Guidelines to be at least 30, yielding an estimated Guidelines range of 70-87 months imprisonment (i.e., approximately 6-7 years'

imprisonment), which further reflects the very serious nature of the offense conduct.[4] Accordingly, the nature and circumstances of Defendant's offense weigh heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention. The evidence against Defendant in this case is extremely strong. As detailed above, Defendant discussed his sexual interest in children at length with an undercover law enforcement agent and then purposefully distributed child sexual abuse material to the UC. Although Defendant distributed the material using an encrypted messaging application, he provided his Telegram handle during chats with users on the Kik platform using an account that clearly belonged to him. In addition, the government obtained evidence from Kik indicating that the defendant also distributed child sexual abuse material to several users on the Kik platform, and uploaded more child sexual abuse material into his Dropbox account. Both Kik and Drobox sent Cybertips to NCMEC based on the content in the defendant's accounts and law enforcement has confirmed that the files associated with the defendant's accounts on both platforms did, in fact, contain child pornography.

While some judges in this Court have indicated that this factor should be given less weight, in *United States Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023) (Howell, J.). Instead, "the

---

[4] The mandatory-minimum term of imprisonment and lengthy Guidelines range provide incentive for Defendant—who has never previously served a term of imprisonment—to flee prosecution.

weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed then–Chief Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and Defendant should be detained pending trial.

**C. The History and Characteristics of the Defendant**

Here, the defendant has admitted to the undercover officer in this case that he has a long-standing sexual interest in children and claims to have acted on this sexual appetite in the past. Specifically, Defendant claimed that he had grabbed the buttocks of his 12-year-old niece, and he indicated that he planned to display his infant daughter in provocative underwear and to allow other men to sexually gratify themselves by viewing her. Whether or not the defendant has ever acted on his fantasies involving his daughter and niece, his admission that he has the desire to do so is indicative of extreme danger to the community at large and especially these two girls.

In addition, the defendant has a prior arrest for possession of drug paraphernalia and has made statements to the UC in this case about drug use and about using drugs to facilitate the sexual

exploitation of children. If the defendant indeed does have a drug habit, this will also contribute to both his dangerousness and risk of flight.

This factor also weighs in favor of detention.

### D. The Nature and Seriousness of the Danger to any Person or the Community

The facts and evidence in this case establish that Defendant poses a grave danger to the community. As discussed above, the distribution of child pornography results in severe mental, emotional, and physical trauma to the children who are victimized by offenders such as Defendant, who seek to achieve sexual gratification through viewing and sharing of images depicting the sexual abuse of children. Defendant, as a consumer and trafficker of child pornography, furthers the demand for new material depicting the graphic sexual exploitation and sexual abuse of vulnerable children. It is precisely "[t]hese significant harms and dangers [that] animated the Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at *7; *Nickelson*, 2018 WL 4964506, at *5 (noting also Congress's creation of significant statutory mandatory minimum penalties); *Blanchard*, 2018 WL 4964505, at *4 (same).

As described above, Defendant here has not only engaged in the distribution of sadistic child pornography depicting the forcible anal rape of a toddler but has also sought out others who share his sexual interest in children. According to Defendant's statements to the UC, he has sexual fantasies involving children, including his own niece and daughter, and he has actively sought out other people who share this interest on social media platforms like Kik. The search warrant returns from Kik indicate that the defendant has been extremely active on that platform, "friending" over 6,000 other users and connecting with many of them to discuss sexual fantasies, including sexual fantasies involving children, and distributing child sexual material to them on the platform as well.

Defendant did not give a second thought to sharing hardcore child pornography with strangers on the Kik platform and with the UC on Telegram.  He knew his conduct was illegal and committed the instant offense using an encrypted application. The totality of his conduct and personal circumstances demonstrates that he is an unmitigable danger to the community and a flight risk.  There is no condition or combination of conditions that could reasonably assure community safety or Defendant's return to Court were he to be released.  This Court should detain him pending trial.

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court order that Defendant Gustav Seestedt remain detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Dated: May 19, 2024      By:      /s/ *Karen L. Shinskie*
Karen L. Shinskie
D.C. Bar No. 1023004
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 730-6878
Karen.Shinskie@usdoj.gov