UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GUSTAV SEESTEDT,<br><br>Defendant. | CRIMINAL NO. 24-CR-235 |

**GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Reply to Defendant's Opposition to the Government's Motion for Pretrial detention. In support thereof, the government states the following:

Additional Information Requested by the Court

At the initial detention hearing in this matter on May 20, 2024, the Court requested more information from the parties to aid in its consideration of whether there are a set of conditions that could be ordered in this case that would reasonably assure the safety of the community and the defendant's return to court. The court specifically asked the government for information regarding the items recovered during the search of the Defendant's property.

The Government has learned that during the execution of the search warrant at the defendant's residence, on May 16, 2024, the FBI seized 14 electronic devices, including five (5) cellular phones, four (4) hard drives, one (1) desktop computer, and four (4) laptops. Preliminary review of one of the hard drives reveals more than 200 images and videos of child pornography,

including multiple videos depicting toddlers engaged in sexual acts with adults. At this time, the remaining devices are still under review.

In addition, the agents also recovered several empty dime bags and a straw which appeared to be paraphernalia of the type that is commonly used for the ingestion of drugs like cocaine. These items were hidden in a hard black case and were found in the living room of the defendant's residence. A photo of the drug paraphernalia is attached as Attachment A.

## Government's Reply to Defendant's Opposition

In his Opposition to the Government's Motion for pretrial detention, the defendant offered more detail with respect to the third-party custody and home incarceration plan that they have proposed. The Government continues to oppose this plan and is not convinced that the proposed conditions would reasonably mitigate the risk that defendant's release would pose to the community.

The three cases cited by the defendant in his Memorandum in support of release are distinguishable from the present case. In *United States v. Stephen Johnson*, 22-cr-176 (CJN), the defendant was charged with Transportation and Possession of Child Pornography, but not Distribution of Child Pornography, and Mr. Johnson's conduct did not include allegations that he interacted with others either by communicating with minors or sending child pornography to other people. On the contrary here, the defendant was constantly in communication with strangers and ultimately with an undercover police officer, discussing the sexual abuse of children and distributing images of this abuse. In the *United States v. Michael Roberson,* 21-cr-102 (JDB), the government did not seek the defendant's pre-trial detention and therefore the decision to release the defendant was made in a very different posture in that case.

The defendant also cites *United States v Dhavale,* No. 19-mj-92, 2020 ML 1935544 (D.D.C. April 21, 2020), as an example of a case where a judge on this court set release conditions for a defendant charged with child exploitation offenses. However, in that case, Chief Judge Howell affirmed the magistrate judge's release order only as a temporary measure in light of the COVID-19 pandemic that was in its height at the time. Notably, her decision cited the apparent inability of the D.C. jail to protect the defendant, who had underlying health conditions, from harm. In *Dhavale*, the court expressly recognized that it is generally true in cases "involving illicit online conduct involving a minor, a defendant cannot establish that an appropriate third-party custodian exists, since, given the ubiquity of internet-capable devices, ensuring against continuing illegal conduct on release often presents insurmountable challenges." *Id. at \*5.*

In *United States v. Galarza*, No. 18-mj-146, 2019 WL 2028710, at \*6 (D.D.C. May 8, 2019), the court rejected a similar third-party custody plan that promised to prevent the defendant from accessing any internet-capable devices, noting that this plan was not realistic because the defendant "needs only a hand-held device to access and/or distribute child pornography." The court recognized that because it is not possible for a civilian custodian to provide round-the-clock monitoring, "the absence of such small devices [in the custodian's] residence cannot be meaningfully verified on a continuous basis." *See id.*

The government has similar concerns with the third-party custody plan here. Even though the third-party custodians have made an extraordinarily generous offer to attempt to monitor the defendant's behavior, the Government submits that it would not be possible for them to adequately monitor this defendant. Even if, as the Defendant's motion promises, "he would never be outside the presence of another adult," Def. Motion at 10, the record in this case demonstrates that this defendant would likely persist in his deviant behavior despite having other adults present. The

difficulty in monitoring this defendant is enhanced here, where the Defendant's harmful online behavior appears to be relentless and compulsive, and where he has been extremely deceptive and has managed to engage in and hide this behavior even while in the presence of another adult--his wife.

The Government has reviewed some of the chats that were produced by Kik in response to our search warrant of the Defendant's account JayDee9955. This account was shut down by Kik after the platform discovered that the defendant was distributing CSAM to other users in early March 2024. The returns that the government has reviewed cover only the period from approximately January 21, 2024, until March 2, 2024. Yet, in that brief approximately six-week period, the return produced 10,230 lines of chats between the defendant and other Kik users. These chats occurred every day, throughout the day and night, including when the defendant said he was working, and when the defendant's wife was at home with him.

The defendant's communications on Kik during this period followed a pattern that revealed not only his compulsive sexual behavior, but also his drug use, and his penchant for hiding this behavior from the people who were close to him. During these Kik chats, the defendant repeatedly expressed that he enjoyed sending other men on Kik three types of images and videos: (1) those depicting himself in women's panties, making him appear like a young girl; (2) those depicting his wife and then teenage ex-girlfriend engaged in sexual acts with him; and (3) those depicting unknown minors engaged in sexual conduct with adult men. During these exchanges with other men on Kik, the defendant repeatedly asked the other men to send him pictures or videos of themselves masturbating to the images that the defendant sent of himself, his wife, his ex-girlfriend, or minor children engaged in sexual activity with adult men. In addition, during these chats, the defendant repeatedly told the other men that he was taking drugs while he was chatting

and masturbating with them.  For example, the Defendant stated that he just "did a line" or "got high on blow" or words to that effect.  Significantly, the defendant also told the other men that he was hiding his behavior from his wife.  He acknowledged to the other Kik users that the behavior he was hiding from his wife would make her "upset," yet, he persisted and seemed to celebrate hiding the behavior from her.  In fact, in one exchange on Kik that occurred on February 6, 2024, the defendant told another Kik user about pictures that he had taken of his clandestine sexual encounters, stating: "got those cum pics on flash drive. Hehehh hide em from wife.  Mmm bro taken a few loads on my ass behind wife's back."  In a chat with another Kik user, the defendant sent a sexually explicit video of his wife and the other user responded, "I tell you what I want to see next time and you convince her to do it and then show me."

After sending sexually explicit videos of his wife to other men (presumably without her knowledge), the defendant would frequently engage in a fantasy with the other men where the defendant would ask the other men to imagine raping his wife.  After sending the videos of his wife and others, the defendant would instruct the other men to, for example, "degrade her" or "feel free to call her a cock slut."  When one Kik user, bigbreed8_2wi, responded, "I wanna breed that slut," the defendant replied, "get worse."  Bigbreed8_2wi stated, "tie her up and blindfold her like its just gonna be you two and we will both come and ravage her.  She won't know what to do." Defendant responded, "Bring a friend.  Fuck, just rape her in the bathroom. Use her until she passes out. Seriously, I want to see her bent over.  Used in the ass."

The defendant also discussed sexual fantasies involving his purported 12-year-old niece.  He also sent photos and videos of minors engaged in sexual acts and asked the men receiving the child pornography to send him pictures or videos of them masterbating.  For example, on February 7, 2024, Kik user gymsharkdaddy39_liw told the defendant, "I'd love to see some

young girls" and the defendant responded, "hehehe I can do that." During his Kik chats, the defendant repeatedly stated that he was carrying on his behavior secretly with his wife "in the other room" or "in the kitchen." He told Kik users during his chat sessions, "hehehe wife here but showing my ass off." On February 10, 2024, the defendant told Kik user bigbetterbest38_nko, "wife in other room daddy."

Given the apparent compulsiveness and deceptiveness of this behavior, the government does not believe that the defendant's in laws will be able to monitor the defendant at all times and prevent him from returning to his deviant on-line sexual behavior, which appears to be an compulsive.

In summary, the evidence in this case reveals that the defendant engages in compulsive sexual behavior and drug use. His sexual behavior frequently involves exchanging child pornography with strangers that the defendant seeks out on-line. It appears that the defendant engages in this activity multiple times a day and that he has managed to hide his behavior from his wife even when she is in the same room. It is not reasonable to believe that the defendant's in-laws, who have no known experience with this type of compulsive behavior, will be able to stop the defendant from engaging in this behavior.

Therefore, the government submits that the totality of the defendant's conduct and personal circumstances demonstrates that he is an unmitigable danger to the community and a flight risk. There is no condition or combination of conditions that could reasonably assure community safety or Defendant's return to Court were he to be released. This Court should detain him pending trial.

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court order that Defendant Gustav Seestedt remain detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Dated: May 22, 2024        By:    /s/ *Karen L. Shinskie*
Karen L. Shinskie
D.C. Bar No. 1023004
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 730-6878
Karen.Shinskie@usdoj.gov

**ATTACHMENT A**

